AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

### for the

### Souther District of TX

United States Courts
Southern District of Texas
FILED

June 06, 2025

Nathan Ochsner, Clerk of Court

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
|  | ) Case No. |
| Silvestre Ortega | ) |
|  | ) **4:25-mj-340** |
|  | ) |
| Defendant(s) | ) |

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     5/13/2025 - 5/22/2025     in the county of     Montgomery     in the

     Southern     District of     Texas     , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 924(a)(1)(A) | Providing false information to a federal firearms licensee |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_Complainant's signature_

Tanner Renner, Special Agent, ATF
_Printed name and title_

Sworn to before me and by telephone

Date:     June 06, 2025

_Judge's signature_

City and state:     Houston, Texas

Peter Bray, U.S. Magistrate Judge
_Printed name and title_

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order

4:25-mj-340

## ATTACHMENT A

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Tanner Renner, being duly sworn, depose and state the following:

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) and have been since August of 2021**.**  As a Special Agent, I am currently assigned to the ATF Houston Group IX, Firearms Trafficking Task Force (FTTF) in the Houston Field Division. My principal duties include investigations into the illegal straw purchasing of firearm, domestic and international firearms trafficking, illegal possession and use of firearms by prohibited persons, burglaries, and robberies of Federal Firearms Licensee (FFLs), the criminal use of firearms in furtherance of violent crimes, organized crime, unlicensed dealing of firearms, and the illegal smuggling/trafficking of firearms domestically and internationally. Prior to my employment with ATF, from May of 2016 to May of 2020, I was a Sheriff's Deputy with the Mesa County (CO) Sheriff's Office and from October of 2020 to August of 2021, I was a Police Officer with the City of Sugar Land (TX) Police Department. During my service in local law enforcement, I conducted various investigations into criminal violations of misdemeanor offenses to felony offenses. I additionally was a member of the Mesa County Special Weapons and Tactics Team (S.W.A.T.), and a specialized unit called the Crime Reduction Unit. Further, I obtained my bachelor's degree in criminal justice with an emphasis on law enforcement from Colorado Mesa University.

2.      I make this Affidavit in support of a criminal complaint to be presented to the United States District Court for the Southern District of Texas in the matter of United States v. **Silvestre ORTEGA.**

3.      This complaint charges that on or about **May 22, 2025,** in the Southern District of Texas, **ORTEGA**, knowingly, intentionally, and unlawfully aided and abetted another subject to

provided false information to a Federal Firearms Licensee under <u>Title 18 U.S.C. Section 924(a)(1)(A)Prov</u> and <u>Title 81 U.S.C. Section 2</u>.

4.      I base this summary of the facts upon information from my personal investigation, information provided to me by other law enforcement officers, information provided by Federal Firearm Licensees (FFL), suspect interviews, and evidence analysis. This is a summary of the basic facts and not a complete description of all the information in the case. It is intended solely to demonstrate that there is sufficient evidence to establish probable cause that **ORTEGA** committed the crime in question.

5.      On **May 13, 2025,** I, Special Agent (SA) T. Renner, was notified of an individual intending to purchase a FN, model M249S, 5.56 caliber rifle, from Adam's Shoota University (Home- based FFL located in Conroe, TX). The intended purchaser of the rifle was identified as Carlos HUERTA, a 24-year-old Hispanic male. On this date, at approximately 10:30 PM, HUERTA responded to the FFL's residence/ place-of-business and placed a $5,000.00 cash (USD) down payment for the rifle. After placing the down payment for the rifle, HUERTA began communicating with the FFL about possibly purchasing a Barrett 50 BMG rifle. Prior to HUERTA placing the down payment for the rifle, he was advised by the FFL the total purchase cost for the rifle alone would be $11,148.67.

6.      The FN, model M249S rifle, and the Barrett 50 BMG rifle are highly sought after firearms by Mexican Drug Trafficking Organizations (DTO). These specific rifles are often the subject of a firearms trafficking scheme where an individual will be recruited to legally purchase the firearm from an FFL in the United States. The individual who recruited the straw purchaser either aims to avoid their name being associated with the purchase of the firearm or are a prohibited person who cannot legally purchase the firearm. The individual who purchases the firearm (straw

purchaser) typically will receive monetary benefits for purchasing the firearm for the recruiter, who in turn, causes or facilitates the firearm being illegally exported from the United States into the Country of Mexico. Further, straw purchasers are commonly young male subjects with little to no financial incomes, which would support the purchase of an M249 rifle.

7.     Further, SA Renner knows FN Herstal firearms are manufactured in either the Country of Belgium or in the State of South Carolina. Therefore, this firearm travelled in interstate commerce to the State of Texas.

8.     SA Renner conducted research into HUERTA and learned he had no known criminal history. Further, search results in the ATF – National Tracing Center (NTC) indicated no recovered firearms by law enforcement. HUERTA was the purchaser on one (1) multiple sale report, which details the purchase of two or more certain firearms from an FFL during a single transaction or within five business days from the same FFL. HUERTA's State of Texas reported wages/income earnings showed his last reported wages to be in Quarter 3 and Quarter 4 of fiscal year 2024. SA Renner observed HUERTA to be employed by Whataburger Restaurants and earned a total of $2,848.69. HUERTA's next reported earnings were from the fiscal year of 2022.

9.     On May 19, 2025, HUERTA responded back to the FFL to complete the purchase and transfer of the M249S rifle. The FFL advised SA Renner that HUERTA arrived in a Nissan Frontier pickup truck and stated he was the owner of the vehicle; however, the FFL advised through conversation, HUERTA appeared to have little knowledge of the vehicle, such as not knowing the make or model. The vehicle's license plate was provided to SA Renner, and a records check indicated the registered owner to be **Silvestre ORTEGA**. HUERTA completed the payment for the rifle, paying in all cash (USD). HUERTA also completed the required ATF Form 4473. The FFL advised due to their suspicions for the purchase, they delayed the transfer of the firearm

to HUERTA. The FFL advised HUERTA immediately contacted unknown persons via phone and advised of the delay. The FFL and HUERTA scheduled a date and time to transfer the firearm, which occurred after the National Instant Criminal Background Check System (NICS) "Brady Date" would expire. This date was set for May 22, 2025, at 6:00 PM.

10.     The FFL provided SA Renner with a copy of the ATF Form 4473. SA Renner observed the personal details to match known personal identifiers for HUERTA (driver's license number, driver's license listed residential address, etc.). SA Renner observed HUERTA marked "yes" to question 21.a., which states: "Are you the actual transferee/buyer of all the firearms(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? Warning: **You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you.** Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer 21.a and may proceed to question 21.b.". Based off responding "yes" to this question, HUERTA declared/certified on a Federal Government document/form that he is purchasing the firearms for himself and not for, or at the direction, of another.

11.     On May 22, 2025, prior to HUERTA's arrival at the FFL, he requested to purchase all 7.62x39mm ammunition the FFL had in inventory. This came to be 64 boxes of ammunition, costing an additional $832.00. On this date, ATF Special Agents, ATF Task Force Officers, and other local law enforcement conducted surveillance at, and around, the FFL's address. Around 6:28 PM, Agents observed the above-described Nissan Frontier pickup truck pull into the parking lot a Chick-fil-A restaurant immediately outside of the neighborhood where the FFL is located. A Hispanic male, later identified as **Silvestre ORTEGA**, was observed being dropped off at this

4

location, rather than going to the FFL. Shortly after, HUERTA arrived at the FFL and completed the transaction for the rifle and the ammunition.

12.     After HUERTA left the FFL, he drove back to the area where **ORTEGA** was located and picked him up. Law enforcement then conducted mobile surveillance on the vehicle. During surveillance, HUERTA drove consistently five to ten miles-per-hour (MPH) below the posted speed limit. Further, law enforcement observed both HUERTA and **ORTEGA** appearing to check their surroundings diligently. Based off the slow driving and their situational attention, it was believed HUERTA and **ORTEGA** were conducting counter surveillance for law enforcement following, as driving five to ten MPH below the speed limit is a tactic utilized for counter surveillance as only vehicles following the subject will continue to drive slow too, in theory.

13.     At the intersection of Highway 242, as the Nissan pickup truck made a right hand turn (southbound) onto FM-1314, the vehicle made a wide right turn, where the vehicle crossed into the left hand (number 1 lane), failing to maintain travel in the right most lane of travel as required (Texas Transportation Code 545.101 – Turning at Intersection: to make a right turn at an intersection, an operator shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway). Additionally, a records check on the license plate for the Nissan Frontier indicated no insurance for the truck. Based off the totality of the above information, a traffic stop was conducted on the vehicle.

14.     At the location of the traffic stop (Shell Gas Station – 21930 SH-494 Loop, New Caney, TX), ATF agents conducted interviews with HUERTA and **ORTEGA**.

15.     <u>HUERTA provided SA Renner the following information</u>:

    a.     HUERTA struggled to provide the name of the firearm he just purchased (M249).

b.  HUERTA showed SA Renner a receipt for the purchase of the ammo and rifle, which totaled $12,049.31. Paid in all cash.

c.  HUERTA admitted to purchasing the firearm for **ORTEGA** and at **ORTEGA**'s request.

d.  **ORTEGA** provided the cash for HUERTA to purchase the firearm.

e.  HUERTA knows **ORTEGA** to be illegally/unlawfully in the United States (Prohibited person from owning/possessing/purchasing firearms).

f.  HUERTA owed **ORTEGA** several hundred dollars prior to purchasing the firearm and by buying the rifle he would have worked his debt with **ORTEGA** off.

g.  HUERTA stated **ORTEGA** organized the purchase, to include providing the FFLs contact information.

h.  HUERTA stated **ORTEGA** had him delete their text message string of their communications together in attempts to discard/destroy any possible evidence of communications between the two regarding the purchase of the rifle.

i.  HUERTA was not sure who the gun was supposed to go to after he purchased it; however, **ORTEGA** told HUERTA "They" wanted the rifle.

j.  HUERTA and **ORTEGA** were to transfer the rifle to an unknown person at an unknown location in the City of Houston on this date.

k.  HUERTA was shown a copy of the ATF Form 4473. HUERTA confirmed his information and signature on the ATF Form 4473. Further, HUERTA reviewed question 21.a. with SA Renner and admitted that the firearm was, in fact, not purchased for him but at the request for **ORTEGA**. HUERTA knew the firearm was destined to be transferred to unknown people after he acquired it.

16.     The following information was provided by **ORTEGA** on the night of the traffic stop (May 22, 2025) and during a post Miranda interview on May 27, 2025. **ORTEGA** is Spanish-speaking only and a follow up interview was required to obtain a full statement. **ORTEGA** waived his Miranda Warning and agreed to speak with Agents.

a.  **ORTEGA** advised he is in the United States unlawfully/illegally, as the does not "have papers".

b.  Due to **ORTEGA**'s status in the United States, he knew he could not purchase the rifle, so he asked HUERTA to purchase it for him.

c.  **ORTEGA** and HUERTA are friends from work and have worked together for approximately three years with various construction companies.

d.  **ORTEGA** was contacted by an individual he knows as "Chilango Barbero", who is in Mexico (Believed to Monterey, MX area). This individual requested **ORTEGA** acquire the M249S rifle.

e.  **ORTEGA** was contacted and instructed to meet an unknown person in the parking lot of King Dollar, located at 14149 Northwest Fwy, Houston, TX, on May 12, 2025. At this location, **ORTEGA** was instructed to collect the $5,000 cash down payment, which **ORTEGA** advised he completed.

f.  **ORTEGA** provided the cash to HUERTA with the intent of purchasing the rifle at the request for the individual located in Mexico.

g.  **ORTEGA** was provided information on which FFL to contact to purchase the firearm from.

h.  On the date HUERTA acquired the firearm, **ORTEGA** was instructed to respond to an area in Houston to transfer the rifle to an unknown person. Once in that area

7

where he was to meet. **ORTEGA** was instructed to contact an unknown individual who would provide additional directions on an exact location to drop the rifle off

i.    **ORTEGA** expected he would be compensated monetarily once he dropped the rifle off.

17.    Based on the foregoing facts, I believe that probable cause exists to establish that **Silvestre ORTEGA**, knowingly, intentionally, and unlawfully aided and abetted another in providing false information to a Federal Firearms Licensee in the Southern District of Texas in violation of Title 18, United States Code, § 922(a)(6) and Title 18, United States Code, §2; as **ORTGEA** provided the funds and requested HUERTA purchase a firearm for him as he is a prohibited person unable to possess or purchase firearms legally in the United States.

Tanner Renner
Special Agent
Bureau of Alcohol, Tobacco, Firearms &
Explosives (ATF)

SUBSCRIBED AND SWORN TO me telephonically this _6th_ day of June 2025, and I find probable cause.

THE HONORABLE PETER BRAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF TEXAS

8